Kenneth BESHEARS, Robert Johnson, Appellants,

v.

Ross ASBILL,

v.

COMMUNICATIONS SERVICES, INC., Appellee.

Kenneth BESHEARS, Robert Johnson, Ross Asbill, Appellees,

v.

COMMUNICATIONS SERVICES, INC., Appellant.

Nos. 89–2798, 89–2929.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 10, 1990.

Decided April 19, 1991.

Rehearing Denied May 24, 1991.

W. Asa Hutchinson, Fort Smith, Ark., for appellants.

William S. Robbins, Jr., Kansas City, Mo., for appellee.

Before BOWMAN and WOLLMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BOWMAN, Circuit Judge.

Kenneth Beshears and Robert Johnson appeal from the order of the District Court[1] dismissing their claims under 29 U.S.C. § 621 *et seq.* (1988), the Age Discrimination in Employment Act of 1967 ("ADEA"), against Communications Services, Inc. ("CSI"). CSI cross-appeals the judgment of the District Court on a jury verdict in favor of Ross Asbill on his age discrimination claim. We affirm.

---

1. The Honorable Morris S. Arnold, United States District Judge for the Western District of Arkansas.

## I.

In the latter part of 1985 CSI, a Kansas corporation engaged in the cable television business, approached Rogers Communications about a possible acquisition of Rogers Cablesystems of Fort Smith, Inc. ("Rogers"). Rogers operated the cable service for Fort Smith, Arkansas. The contract that CSI and Rogers signed in February 1986 included a stipulation prohibiting CSI from discussing staff changes with Rogers employees until the time of acquisition.

Prior to CSI's acquisition of the Fort Smith system, the Fort Smith operation was very different from CSI's other cable service operations. Its salaries were at least twenty-five percent higher and its employee structure was markedly different, as were its management and employee policies. CSI, after evaluating the Fort Smith operation, decided to make a number of changes, including the elimination of twenty employee positions.

To this end, CSI representatives met with Rogers' employees on three separate occasions during the early part of 1986. At the first of these meetings, CSI's president, Bruce Plankington, addressed Rogers' entire employee complement. When he was asked how CSI felt about older employees, employees claim Plankington responded that, although he did not foresee any problems, it was his experience that they sometimes had difficulty adjusting to change.

At the next of these meetings, Gary Cox, CSI's vice-president of operations, conducted interviews with Rogers' technical personnel. Cox met with Beshears, Johnson, and Asbill, among others, to discuss their job responsibilities and experience and to notify them that there would be some changes in the company's structure.

Beshears, who was 42 in 1986, was a service technician for Rogers. He had been with the company for seven and one-half years, and his hourly rate of pay was $10.76. Johnson, 43, had been a Rogers employee for approximately 23 years. In his position as a project supervisor, Johnson supervised various construction jobs. His annual salary was over $31,000.00.

Asbill, 57, had been with Rogers for approximately 18 years. He was paid $13.12 an hour as a dispatcher scheduling customer service calls.

After meeting with the employees individually, CSI officials made their final employment decisions. The decisions were conveyed to Rogers' staff on June 12 and 13, 1986. Beshears was informed that he would not be offered a job as a service technician with CSI; Johnson that CSI was eliminating the construction department and that his position no longer existed; Asbill that CSI's structure did not require a separate dispatcher position, as CSI's customer service representatives, earning $4.25 an hour, would perform the duties of a dispatcher. CSI did ask Asbill to continue dispatching for a short transitional period during which a new computer system would be installed. Asbill accepted the $10.50 per hour position and worked until August 15, 1986. CSI did not offer the three men alternative employment.

A group of Rogers employees, including Beshears, Johnson, and Asbill, filed a charge of age discrimination against CSI with the Equal Employment Opportunity Commission on January 26, 1987. This filing did not comply with the ADEA's 180–day notification requirement. On June 15, 1988, eleven former Rogers employees, again including Beshears, Johnson, and Asbill, filed a complaint against CSI in the District Court alleging violations of the ADEA and setting forth pendent state claims. CSI's motion for summary judgment resulted in the dismissal of the claims of three of these employees. The claims of five additional employees were dismissed on the basis of a confidential settlement.

Beshears, Johnson, and Asbill proceeded to trial on September 27, 1989. The trial was conducted in two phases. The first phase was concerned with the question of whether the ADEA's 180–day filing period had been tolled (under the doctrine of equitable tolling). Three interrogatories were submitted to the jury: (1) whether the employer had posted the required statutory notice in a prominent and readily-accessible place; (2) whether Beshears, Johnson, and

Asbill knew within the 180–day period that it was illegal for their employer to discriminate against them because of age; and (3) whether they had the means to acquire that knowledge before the 180 days expired. The jury answered all three questions in the negative as to Asbill, but found that Beshears and Johnson had the means to acquire the requisite knowledge within the 180 days. Based upon these findings, the District Court dismissed the claims of Beshears and Johnson as barred by their failure to comply with the statutory filing period.

The second phase of the trial went forward on the merits of Asbill's age discrimination claim. The jury returned a verdict in Asbill's favor and awarded him back pay in the amount of $24,331.67. As authorized by the ADEA, liquidated damages in an equal amount were assessed based upon the jury's finding of "willfulness."

Beshears and Johnson appeal, contending that the District Court erred by instructing the jury that the employees had the burden of proving they did not have the means to acquire knowledge that age discrimination was illegal. CSI cross-appeals, arguing that: (1) CSI's employee manual provided Asbill with the means to become aware that age discrimination was prohibited; (2) the evidence was insufficient to impose the burden-shifting standards applicable to "mixed motive" discrimination cases; (3) CSI would not have retained Asbill "but for" his age; (4) Asbill is not entitled to back wages for the time period in which he received social security disability benefits; and (5) the evidence was insufficient to support the jury's finding of "willfulness." We affirm in all respects.

## II.

The appeal of Beshears and Johnson raises only one issue that warrants discussion: whether the District Court's jury instruction regarding equitable tolling "was an

improper instruction on the law and placed [upon them] an undue burden of proof." Brief of Beshears and Johnson at 7. Their argument implicates the court's allocation of the burden of proof.

We quote the contested instruction:

The plaintiffs have the burden of proving that as to each one of them, no poster describing an employee's rights under the age discrimination law was placed in a prominent, accessible, and readily observable place.

They have the additional burden of proving that they did not know until after July 30, 1986 that discrimination against them by an employer because of age was illegal, and that they did not have the means to acquire that knowledge before then.

Phase One Trial Transcript at 181. Accompanying this instruction were the three interrogatories mentioned above. The third interrogatory required the jury to find whether "from a preponderance of the evidence that any of the plaintiffs ... had the means to acquire knowledge before July 30, 1986, that discrimination against him by an employer because of age was illegal[.]" Phase One Trial Transcript at 183.[2]

 The instruction at issue was based upon our decision in *DeBrunner v. Midway Equip. Co.*, 803 F.2d 950 (8th Cir. 1986).

An employer's failure to post notice of ADEA rights as required by 29 U.S.C. § 627 may be grounds for tolling the 180–day period until the employee acquires "actual knowledge" of his rights or retains an attorney. However, an employer's failure to post the requisite notice will not equitably toll the 180–day filing period once an employee acquires "general knowledge" of his or her right not to be discriminated against on account of age, or the means of obtaining such knowledge.

**2.** Counsel for Beshears and Johnson objected to these jury directions, complaining that the phrase "means to acquire knowledge" was

"meaningless to a jury[,]" had "no significance[,]" and was "an impossible burden for the

*Id.* at 952.[3]

The court's instruction, although otherwise proper, incorrectly allocates the burden of proof among the parties. The law on this point is clear. "The employee bears the burden of proving the absence of notice to justify equitable considerations." 3A A. Larson & L. Larson, *Employment Discrimination*, § 102.12 at 21–234 (1991). However, as this Court stated in *DeBrunner*, "[t]he employer bears the burden of proving that the employee was generally aware of his or her right [not to be discriminated against on account of age] if notice was not posted." *DeBrunner*, 803 F.2d at 952. Although here the instruction misallocated the burden of proof with respect to "general knowledge" and "the means of obtaining such knowledge," we are satisfied that in the circumstances of this case the error was harmless. *See* Fed.R.Civ.P. 61.

We find this to be so for several reasons. First, the faulty instruction was accompanied by the three interrogatories, which focused the jury's attention upon the evidentiary issues related to equitable tolling. The interrogatories make no reference to the burden of proof. Further, CSI elicited much of the evidence relevant to the issue, and the evidence strongly supports the finding that Beshears and Johnson had the means of obtaining knowledge of the illegality of age discrimination. Indeed, Beshears admitted upon cross-examination that he was aware that age discrimination was prohibited at the time of his termination, but mistakenly believed that only minorities and women were protected. Phase One Trial Transcript at 71–74. Under cross-examination, Johnson acknowledged that, as the owner and operator of a small cable system, he was expected to comply with the requirements of the Federal Communications Commission. Phase

One Trial Transcript at 44–46. However, he claimed to have been unaware of one such requirement that "no person shall be discriminated against in employment by [a cable system such as the one owned by Johnson] because of race, color, religion, national origin, age or sex." 47 C.F.R. § 76.73(a) (1989). Considering this evidence and the record as a whole, we do not believe that the District Court's erroneous jury instruction adversely affected the substantial rights of Beshears and Johnson. *See Brewer v. Jeep Corp.*, 724 F.2d 653, 656 (8th Cir.1983) (citations omitted).

Upon careful review of the issues raised in this appeal,[4] we are satisfied that the District Court properly dismissed the claims of Beshears and Johnson on the basis of their failure to comply with the statutory filing period.

### III.

■ In its cross-appeal, CSI argues that as a matter of law its employee manual provided Asbill with the means to become aware that age discrimination was prohibited. We conclude, however, that the District Court correctly denied CSI's motion for a directed verdict on this issue.

CSI's employee manual states:

We unequivocally support the principle and spirit of equal employment opportunity based upon qualification, related experience, job pertinence and relevant individual differences and not on the basis of nonrelevant extraneous factors such as race, religion, national origin, handicap, sex or age. We have practiced the principles of equal employment opportunity since our inception.

Our goal is to continue to administer our employment policy in order that all qualified persons are accorded an equal opportunity for employment or pro-

---

plaintiffs[.]" Phase One Trial Transcript at 162, 173.

**3.** In cases where an employer has fulfilled its statutory duty by conspicuously posting the official EEOC notices, constructive knowledge is attributed to an employee. *See Kale v. Combined Ins. Co. of Am.*, 861 F.2d 746, 753 (1st Cir.1988).

**4.** As we understand their appeal, Beshears and Johnson also appear to argue that we should abandon the "means to acquire knowledge" part of the *DeBrunner* test on the ground that it lacks meaning. *DeBrunner*, however, is the law of this circuit, and it cannot be overruled by a three-judge panel such as this one.

motion without discrimination due to race, religion, national origin, handicap, sex or age.

Appellee/Cross–Appellant's Appendix at 4.[5]

Although this language forcefully presents CSI's corporate policy, it does not state that the policy is required by law. In fact, the manual in no way informs employees of their rights under the law. *See Edgeworth v. Fort Howard Paper Co.*, 673 F.Supp. 922, 926 n. 6 (N.D.Ill.1987). We therefore agree with the District Court that it was for the jury to decide what weight, if any, it would give to the manual in reaching its decision on the question whether within the 180–day period Asbill had the means of obtaining the knowledge that age discrimination is illegal.

## IV.

CSI contends that Asbill did not produce any direct evidence of age discrimination and, therefore, the District Court incorrectly imposed the burden-shifting standards established by *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795, 104 L.Ed.2d 268 (1989).[6] The record does not support this contention.

■■■ "Under the ADEA, a plaintiff may show discrimination by either direct or indirect methods of proof." *Blake v. J.C. Penney Co.*, 894 F.2d 274, 278 (8th Cir. 1990). When an employee produces direct evidence that an illegitimate criterion such as age "played a motivating part in [the] employment decision," *Price Waterhouse*, 490 U.S. at 258, 109 S.Ct. at 1795, the burden-shifting standards of *Price Waterhouse* come into play. In such cases, "the defendant may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the [illegitimate criterion] into account." *Id.*

**5.** Asbill testified that he read this manual. Phase One Trial Transcript at 59–62. He also signed a form acknowledging that he read and understood the manual.

**6.** *Price Waterhouse* involved a Title VII claim. However, this Court has accepted *Price Waterhouse*'s burden-shifting standards in ADEA

■■ In the absence of direct evidence of discrimination, courts apply the "basic tripartite pattern of proof (prima facie case —rebuttal—pretext)" as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[7] 3A A. Larson & L. Larson, *Employment Discrimination*, § 102.41 at 21–284 (1991). *See also Chaffin v. Rheem Mfg.*, 904 F.2d 1269, 1272–73 (8th Cir.1990). The plaintiff makes a prima facie case "by showing membership in a protected group, qualification for the job, rejection for the position, and that after rejection the employer continued to seek applicants of [plaintiff's] general qualifications." *Price Waterhouse*, 490 U.S. at 278, 109 S.Ct. at 1805 (O'Connor, J., concurring) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. If this burden is carried, the plaintiff is given an opportunity to prove by a preponderance of the evidence that the employer's stated reasons were in fact pretext. *McDonnell Douglas*, 411 U.S. at 802–04, 93 S.Ct. at 1824–25. The plaintiff retains the burden of persuasion at all times. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

Once all the evidence has been received, [we] should determine whether the *McDonnell Douglas* or *Price Waterhouse* framework properly applies to the evidence before it. If the plaintiff has failed to satisfy the *Price Waterhouse* threshold, the case should be decided under the principles enunciated in *McDonnell Douglas* and *Burdine*, with the plaintiff bearing the burden of persuasion on the ultimate issue whether the employment action was taken because of discrimination.

cases. *See, e.g., Perry v. Kunz*, 878 F.2d 1056, 1058–60 (8th Cir.1989).

**7.** Although the action in *McDonnell Douglas* was brought under Title VII, this Court routinely applies the *McDonnell Douglas* approach in ADEA cases. *See, e.g., Perry*, 878 F.2d at 1058–60.

*Price Waterhouse,* 490 U.S. at 278–79, 109 S.Ct. at 1805 (O'Connor, J., concurring).

What is "direct evidence" sufficient to satisfy the *Price Waterhouse* threshold? *Price Waterhouse* defines the term negatively to exclude "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse,* 490 U.S. at 277, 109 S.Ct. at 1804 (O'Connor, J., concurring). While we agree that "stray remarks" will not suffice to invoke the *Price Waterhouse* formula, this Court has held that "[d]irect evidence may include evidence of actions or remarks of the employer that reflect a discriminatory attitude." *Gray v. University of Ark.,* 883 F.2d 1394, 1398 (8th Cir.1989). Comments which demonstrate a "discriminatory animus in the decisional process[,]" *Price Waterhouse,* 490 U.S. at 278, 109 S.Ct. at 1805 (O'Connor, J., concurring), or those uttered by individuals closely involved in employment decisions may constitute direct evidence within the meaning of *Price Waterhouse. See Burns v. Gadsden State Community College,* 908 F.2d 1512, 1517–19 (11th Cir.1990) (The statement that "no woman would be named to a B scheduled job" was direct evidence of discriminatory motive when its author made the employment decision at issue.); *E.E.O.C. v. Alton Packaging Corp.,* 901 F.2d 920, 923–25 (11th Cir.1990) (Statement made by person responsible for promotion decisions that "if it was his company, he wouldn't hire any black people" constituted direct evidence.).

■ Based upon our reading of *Price Waterhouse* and the cases that have followed in its wake, we conclude that Asbill did present evidence that properly may be characterized as "direct." We refer to a remark made by CSI's president Bruce Plankington, who actively participated in the personnel decisions at issue. At least five people testified that they heard Plankington make a statement to the effect that

older employees have problems adapting to changes and to new policies.[8]

■ Gary Cox, another CSI official involved in these employment decisions, also made several age-related comments. Cox informed Steve Beshears, Kenneth's brother, that his position as chief technician had been offered to a younger man and explained that younger people were more adaptable to CSI's policies than older people. Phase Two Trial Transcript at 49. Cox made a similar statement to Bob Griffith, a technical manager. *Id.* at 104. Further, Cox told Cliff Griffin, a warehouse employee, that he would not be happy as an installer because of his age and job experience. *Id.* at 145. These were not stray or random comments: they were made during the decisional process by individuals responsible for the very employment decisions in controversy. We therefore conclude that the District Court properly employed the *Price Waterhouse* method of proof.

### V.

■ CSI argues that it would not have retained Asbill "but for" his age and that it should not be held accountable for conduct that the jury found to be discriminatory because Asbill testified at the trial that he would not have accepted a position with CSI for $4.25 per hour. *See* Phase Two Trial Transcript at 223. Because its evidence on this issue was not rebutted, CSI posits, the District Court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict. We disagree.

"A directed verdict and a judgment notwithstanding the verdict should be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Glismann v. AT & T Technologies,* 827 F.2d 262, 266 (8th Cir. 1987). The record contains evidence from which reasonable inferences sustaining Asbill's position can be drawn. We refer not

---

**8.** Plankington testified that he did not recall making any such statement. Phase Two Trial Transcript at 123. However, "[i]t was for the jury to judge the credibility of the witnesses." *Toombs v. Bell,* 915 F.2d 345, 349 (8th Cir.1990).

only to the age-related comments made by CSI officials, but also to the testimony of CSI's Gary Cox that Asbill's performance as a dispatcher was fine. Phase Two Trial Transcript at 198. In addition, the jury was not required to credit the testimony of witnesses favorable to CSI. Accordingly, the District Court correctly denied CSI's motions for directed verdict and judgment notwithstanding the verdict. Our review of the record satisfies us that a jury question was presented and that, viewing the evidence in the light most favorable to Asbill, there is sufficient evidence to support the jury's verdict. *See Rademaker v. Nebraska,* 906 F.2d 1309, 1311 (8th Cir.1990) ("It is a familiar principle that a judgment entered on a jury verdict should be affirmed if, viewing the evidence in the light most favorable to appellees, reasonable persons could differ as to the proper conclusion.")

## VI.

CSI contends that, as a matter of law, Asbill is not entitled to back wages for the time period in which he received social security disability benefits.[9] This contention lacks merit.

■ Confronted with a similar claim, the Tenth Circuit determined that it was a "fact issue as to whether [the employee's] disability, although sufficiently severe to entitle him to [disability] benefits, nonetheless did not prevent [the employee] from continuing [in the former] employment." *Spulak v. K Mart Corp.,* 894 F.2d 1150, 1158 (10th Cir.1990). The *Spulak* court affirmed the damage award as "the jury resolved this issue favorably" to the employee. *Id. See also Johnston v. Harris*

County Flood Control Dist., 869 F.2d 1565, 1581 (5th Cir.1989) ("[T]he district court ... may exercise its discretion in deciding whether to deduct social security disability benefits from back pay awards."), *cert. denied,* ── U.S. ──, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990); *Whatley v. Skaggs Cos.,* 707 F.2d 1129, 1138 (10th Cir.)[10] ("The trial court's refusal to deduct plaintiff's disability benefits from defendant's back pay liability is likewise not error. Such benefits are from a collateral source, and offset is not required."),[11] *cert. denied,* 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). *But see Smith v. Office of Personnel Management,* 778 F.2d 258, 262–63 (5th Cir.1985) (holding that the collateral source rule is inapplicable when the defendant is the source of the benefit at issue, the court affirmed the offset of disability compensation as within the discretion of the trial court), *cert. denied,* 476 U.S. 1105, 106 S.Ct. 1949, 90 L.Ed.2d 358 (1986).

■ We adopt the "fact issue" approach articulated by the Tenth Circuit in *Spulak.* Asbill testified that he had a bad knee and a bad back and that these injuries were related to his work as an installer. Although these problems existed prior to, and throughout, Asbill's term as a dispatcher, CSI's Gary Cox acknowledged that Asbill's performance as a dispatcher was fine. Phase Two Trial Transcript at 198. As far as we can ascertain, there is no evidence in the record that Asbill's condition worsened after he left CSI's employ so as to preclude him from performing his duties as a dispatcher. The jury heard the evidence, listened to the parties' arguments, and resolved the issue favorably to Asbill. Based on the record before us, we

---

**9.** CSI argues that Asbill's receipt of such benefits proves that he was no longer capable of performing his duties as a dispatcher.

**10.** In *Whatley,* the plaintiff suffered a disabling back injury after leaving the defendant's employ. Finding that the plaintiff would not have suffered this injury had the defendant not terminated him from his management position, the trial court expressly declined to reduce defendant's back pay liability based upon the plaintiff's disability. *Whatley,* 707 F.2d at 1138 n. 8.

**11.** Citing the "collateral source rule," according to which the defendants may not benefit from payments made to the plaintiff by third parties, "[m]ost courts have refused to deduct such benefits as social security and unemployment compensation from ADEA awards." *Guthrie v. J.C. Penney Co.,* 803 F.2d 202, 209 (5th Cir.1986). Because we believe that disability benefits qualitatively are different from either social security benefits or unemployment compensation, we doubt whether they should be considered a "collateral source" in the context of employment discrimination litigation.

believe this issue properly was submitted to the jury.

## VII.

Finally, CSI vigorously argues that the evidence is insufficient to support the jury's finding that it "willfully" violated the ADEA.[12] Although the question is close, we are not persuaded.

 A violation is "willful" if "'the employer ... showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.'" *Trans World Airlines v. Thurston*, 469 U.S. 111, 126, 105 S.Ct. 613, 624, 83 L.Ed.2d 523 (1985) (quoting *Air Line Pilots Ass'n v. Trans World Airlines*, 713 F.2d 940, 956 (2d Cir. 1983)). Under *Thurston*'s "two-tiered liability scheme[,]" *Thurston*, 469 U.S. at 128, 105 S.Ct. at 625, we must distinguish between a mere violation of the ADEA, whether negligent or intentional, and one that properly may be characterized as willful. Although it is not enough to show that an employer knew that the ADEA was "in the picture," *see McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 131–35, 108 S.Ct. 1677, 1680–82, 100 L.Ed.2d 115 (1988), "[w]e think *Thurston* means at least this: if the people making the employment decision know that age discrimination is unlawful, and if there is direct evidence—more than just an inference from, say, an arguably pretextual justification—of age-based animus, the trier of fact may properly find willfulness." *Neufeld v. Searle Laboratories*, 884 F.2d 335, 340 (8th Cir.1989).

 Under the *Neufeld* formulation, we cannot say that the evidence was insufficient to sustain the jury's finding of willfulness. The record reflects that CSI officials were "intimately familiar" with the ADEA and the other anti-discrimination laws. Phase Two Trial Transcript at 120–22, 198–99. As heretofore discussed, *see supra* Section IV., there is also direct evidence of comments manifesting an age-based ani-

mus on the part of the CSI officials who were responsible for the employment decisions here at issue. Were we the finders of fact in this case we might have reached a result different from that reached by the jury, but "our task on review is not to act as the trier of fact." *Morgan v. Arkansas Gazette*, 897 F.2d 945, 951 (8th Cir.1990). Based on our review of the record, we conclude that the question of willfulness properly was submitted to the jury and that its finding must be sustained.

## VIII.

With respect to both the appeal and the cross-appeal, the judgment of the District Court is affirmed.

---

12. The resolution of this issue is significant in two respects: (1) the ADEA states that "liquidated [or double] damages shall be payable only in cases of willful violations[,]" 29 U.S.C. § 626(b); and (2) the ADEA provides for a two-

year statute of limitations, with a three-year exception for willful violations. 29 U.S.C. § 626(e)(1) (incorporating the statute of limitations provision of the Portal–to–Portal Act of 1947, 29 U.S.C. § 255(a) (1988)).