No. 96-3561

E. W. BLANCH CO., INC.,             *
a Delaware corporation with         *
its principal place of              *
business in Minnesota,          *
                                    *
     Plaintiff-Appellee,            *
                                    *
v.                                  *
                                    *
HUSSEIN A. ENAN, an individual  *
resident of California,             *
                                    *
     Defendant-Appellant            *
                                    *   Appeal from the United States
and                                 *   District  Court  for  the  District
                                    *   of Minnesota
HUSSEIN A. ENAN, an individual  *
resident of California          *
                                    *
     Counterclaimant-Appellant  *
                                    *
v.                                  *
                                    *
E. W. BLANCH CO., INC. a        *
Delaware corporation with its   *
principal place of business in  *
Minnesota, and E.W. BLANCH      *
HOLDINGS, INC., a Delaware      *
corporation with its principal  *
place of business in Minnesota  *
                                    *
     Counterclaim Defendants-
          Appellees

              Submitted:  March 14, 1997

                 Filed:  September 5, 1997

Before WOLLMAN and BEAM, Circuit Judges, and REASONER,[1] District Judge.

REASONER, District Judge.

This is an appeal from the order of the district court[2] granting summary judgment in favor of Appellee E. W. Blanch Co., Inc. ("Blanch Company") and against Appellant Hussein A. Enan ("Mr. Enan"). Mr. Enan argues first, on his breach of contract claim for severance compensation, that there is no evidence to support the district court's conclusion that his rights under a separate Employment Agreement were waived by his independent act of voting to convert Blanch Company from a partnership to a corporation; and second, that the record contains direct evidence of age-based discrimination which entitles him to submit his age discrimination claim to a jury. For the reasons discussed below, the district court's order granting summary judgment on the age discrimination claim is affirmed. We reverse and remand the case for trial on the merits of the breach of contract claim.

## I. Background

### A. Factual

Appellee, Blanch Company, is a Delaware corporation headquartered in Bloomington, Minnesota, which provides reinsurance brokerage services for primary insurance companies. Appellant, Mr. Enan, is a Canadian citizen with substantial experience and expertise in the reinsurance business. In March 1979, Mr. Enan founded Enan & Co., an insurance brokerage business in Montreal, Canada. Shortly after forming the company, Mr. Enan moved the

---

[1]The Honorable Stephen M. Reasoner, Chief Judge, United States District Court for the Eastern District of Arkansas, sitting by designation.

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

business to San Francisco where it remained until 1992.

In March 1992, Enan & Co. was acquired in a merger transaction by E. W. Blanch Limited Partnership ("Blanch Partnership"), a Minneapolis-based reinsurance brokerage firm. An essential element of Blanch Partnership's acquisition of Enan & Co. was for Mr. Enan to become an employee of Blanch Partnership. With the acquisition, Mr. Enan was contemporaneously presented a copy of the existing Blanch Partnership Agreement[3] and executed a separate Employment Agreement with Enan & Co.[4] The Employment Agreement provides that Mr. Enan be employed "as a Senior Executive, to perform the duties and functions specified by the President or Chief Executive Officer," and that Mr. Enan receive an annual salary of $400,000 a year, plus participation in the Broker Incentive Plan and a potential management bonus. The Employment Agreement also contains provisions addressing termination of employment under various conditions. Sections 7(a) and (d) of the Employment Agreement provide:

> (a) The employer may terminate the Employee's employment hereunder, and shall have no further obligation or liability to the Employee ... if... (iii) the Employee voluntarily terminates his employment hereunder; provided, however, that if the Employee voluntarily terminates his employment hereunder because his responsibilities have been materially diminished ... the Employee's termination of employment shall be deemed to be a termination by the Employer without cause. Any termination pursuant to subsections (i)-(ii) of this Section 7(a) shall be deemed to be a termination for cause.

---

[3]Section 5.02 of the Partnership Agreement provides that "[e]xcept as otherwise expressly provided in this Agreement, all decisions respecting any matter set forth herein or otherwise affecting or arising out of the conduct of the business of the Partnership shall be made by the General Partners and the General Partners shall have the exclusive right and full authority to manage, conduct and operate the Partnership's business."

[4]The Employment Agreement was subsequently assigned to Blanch Partnership.

(d) In the event this Agreement is terminated by the Employer without cause, (i) then the Employer shall pay to the Employee or his estate, as the case may be, $33,333 per month for forty-eight (48) months, and (ii) the Employer shall also pay the Employee an additional $33,333 per month (x) for twenty-four (24) months, or (y) for the number of months remaining under the terms of this Agreement, whichever is less, but shall otherwise have no further obligation or liability under this Agreement.

(emphasis added).  During the year after Blanch Partnership's acquisition of Enan & Co., Mr. Enan spent approximately half of his time servicing existing Blanch Partnership and Enan & Co. clients and trying to obtain new business from them.  The other half of his time was devoted to corporate matters.

In March 1993, E. W. Blanch Holdings, Inc. ("Blanch Holdings") was created.  All existing interests in Blanch Partnership were exchanged in an initial public offering ("I.P.O.") of stock for shares in Blanch Holdings.  Blanch Partnership was merged out of existence.  The purpose of the I.P.O. was to reorganize Blanch Partnership into a corporate form of business.  From and after the I.P.O., the business formerly conducted by Blanch Partnership was conducted by Blanch Company, whose board of directors included Mr. Enan.

Only three of the eight former general partners of Blanch Partnership were asked to serve on Blanch Holdings' board of directors.  Mr. Enan was not one of those three.  Significant changes in the job responsibilities of the former general partners occurred after the I.P.O.  These changes resulted primarily from the division of responsibility between Blanch Company and Blanch Holdings.[5]  After the I.P.O., Blanch Company assumed responsibility for the day-to-day sales and servicing operations of the business,

---

[5]Immediately following the I.P.O., Blanch Company was Blanch Holdings only operating subsidiary.

-4-

while matters of "corporate governance" became the responsibility of Blanch Holdings and specifically its board of directors. The I.P.O. left Mr. Enan as an employee of Blanch Company.

**B. Procedural**

Blanch Company commenced this action on November 21, 1994, seeking a declaratory judgment that its former employee, Mr. Enan, is not entitled to severance compensation under the terms of his Employment Agreement with Blanch Company. Mr. Enan counterclaimed against Blanch Company and its parent, Blanch Holdings, for breach of contract and violation of federal and state laws prohibiting age discrimination. Both parties filed motions for summary judgment with Mr. Enan moving on his breach of contract counterclaim, and Blanch Company moving on its declaratory judgment action (based on the Employment Agreement) and the claim of age discrimination.

On September 12, 1996, the district court issued a Memorandum and Order granting Blanch Company's motion for summary judgment and denying Mr. Enan's motion for summary judgment. Judgment was entered on September 13, 1996, and this appeal followed.

## II. Standard of Review

This Court reviews the district court's grant of summary judgment <u>de novo</u>, applying the same standard as the district court. <u>Garner v. Arvin Indus. Inc.</u>, 77 F.3d 255, 257 (8th Cir. 1996)(citations omitted). That standard is whether the record, when viewed in the light most favorable to the non-moving party, shows no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c); <u>In re Young</u>, 82 F.3d 1407, 1413 (8th Cir. 1996).

## III. Severance Compensation - Breach of Contract

The focus of the parties' dispute over severance compensation

is whether Mr. Enan's responsibilities were "materially diminished" pursuant to Section 7 of the Employment Agreement. Blanch Company argues that the language of the Employment Agreement provides that Mr. Enan be employed as a Senior Executive to perform the duties and functions specified by the President and Chief Executive Officer. Blanch Company reasons that because Mr. Enan was employed throughout the course of his tenure with E. W. Blanch as an employee who reported directly to the President and because the Employment Agreement did not specify any other duties or authority, Mr. Enan's duties were not materially diminished. Blanch Company further states that the reinsurance brokerage business formerly run by Blanch Partnership was subsequently run by Blanch Company, whose board of directors included Mr. Enan. In addition to the Blanch Company board seat, Blanch Company alleges that Mr. Enan was given other influential, high-level positions and responsibilities.

Mr. Enan counters that his responsibilities after the reorganization were in fact materially diminished from what they were under the Employment Agreement. Specifically, Mr. Enan contends that prior to the I.P.O., he acted as a general partner in Blanch Partnership and shared the responsibilities of overall management and control of the business and affairs of the Partnership but that after the reorganization, he was unable to participate in matters of corporate governance and was not made aware of corporate decisions. Mr. Enan claims that under the partnership structure, he had the right to participate in important business decisions and provide his input, but that after the I.P.O. he was intentionally excluded from most such discussions because senior management did not regard him as having a "need to know." Mr. Enan testified, "I quit because my responsibilities were diminished."[6]

---

[6]Mr. Enan resigned on November 8, 1994.

The district court found that Mr. Enan knew he would not serve as a member of Blanch Holdings board of directors and, therefore, waived any rights and responsibilities he had under the Employment Agreement. Specifically, as a result of Mr. Enan's actions in voting in favor of the I.P.O., the district court reasoned that Mr. Enan waived or intentionally relinquished all rights as a general partner, including those attributable to his Employment Agreement. However, while Mr. Enan admits he knew at the time he voted for the I.P.O. that he would not be a general partner nor be on the initial board of directors of Blanch Holdings, he argues that he received express assurances that he would still be involved in the management and control of the business. After the I.P.O., the evidence reveals that Mr. Enan was not involved in any of the following corporate management actions directly related to the operation of Blanch Company:

1. The decision of Blanch Holdings to restructure Blanch Company into two separate entities;

2. the Swire Blanch Joint Venture;

3. the decision to begin negotiations for the acquisition of Elton George Companies;

4. Blanch Holdings' acquisition discussions with various other insurance intermediary firms; and

5. Blanch Holdings' negotiations to purchase a software company.

Furthermore, before the I.P.O. there is evidence in the record to suggest that Mr. Enan would have been involved in decisions of this type.

It does not follow from the fact that Mr. Enan knew at the time of the I.P.O. he would not be a general partner nor be on the initial board of directors of Blanch Holdings that he would no longer be involved in management level decisions but would in essence be relegated to the role of sales person. Under California

law,[7] it also does not follow as a matter of law that Mr. Enan's vote in favor of the I.P.O. amounted to a waiver of his rights under his separate Employment Agreement. See Vacco Industries, 6 Cal. Rptr. 2d 602, 609 (Cal. Ct. App. 1992). Mr. Enan was the only one of the eight general partners that entered an Employment Agreement containing a severance clause for compensation if his duties were materially diminished. An inference can be drawn from this fact that Mr. Enan's responsibilities with Blanch Company may have been unique and were to be preserved in spite of the change to corporate structure. The district court regarded it as Mr. Enan's obligation at the time of the restructuring either to leave the company or to take "other recourse to ensure that he would still be involved with corporate governance and strategy." A. 96-97. However, as long as the Employment Agreement was in force and effect, Mr. Enan was under no obligation to do either. Under the Employment Agreement, which both parties agree was in effect after the I.P.O.,[8] Mr. Blanch had complete control over the extent to which Mr. Enan was involved in running the business. There exists a question of fact whether by choosing to change Mr. Enan's job responsibilities after the I.P.O., Mr. Blanch materially diminished Mr. Enan's duties which would entitle him to severance compensation under the Employment Agreement.

## IV. Age Discrimination

With respect to the age discrimination claim, Mr. Enan claims he had both direct evidence of age discrimination and indirect

---

[7]Section 14 of the Employment Agreement provides that the agreement "shall be governed by and construed in accordance with the laws of the State of California, without giving effect to principles of conflicts of laws."

[8]Blanch & Co. admits that Mr. Enan's "status as an employee continued to be governed by the terms of his Employment Agreement, while his status as an investor was governed by his rights as a shareholder."

evidence. In order to sustain a mixed-motive claim of age discrimination, a party must provide direct evidence that an illegitimate criterion such as age was a motivating factor in the employment decision. Beshears v. Asbill, 930 F.2d 1348, 1353 (8th Cir. 1991). Then the burden-shifting standards of Price Waterhouse v. Hopkins, 490 U.S. 228, 258 (1989) come into play and the burden shifts to the employer to establish that it would have made the same decision notwithstanding the party's age.

Mr. Enan relied upon two facts: 1) that he was excluded from corporate decisions and 2) the statement of Mr. Blanch when Chris Walker was selected for the position of board member, that "Mr. Walker is the right age". This alleged statement was the only incident of direct evidence of age bias alluded to by Enan. In the cases relied upon by Mr. Enan, in addition to direct evidence of age discrimination, there was further evidence of a discriminatory attitude. See Beshears v. Asbill, 930 F.2d 1348, 1353-54 (8th Cir. 1991) and Radabaugh v. Zip Feed Mills, Inc., 997 F.2d 444, 448-49 (8th Cir. 1993). Here, Mr. Enan could not point to any evidence of discriminatory attitude other than the alleged statement by Mr. Blanch. In Woythal v. Tex-Tenn Corp., 112 F.3d 243 (6th Cir. 1997) the Sixth Circuit upheld summary disposition of an Age Discrimination in Employment Act claim where the age discriminatory comments made no direct reference to the plaintiff's age. Here, the comment by Mr. Blanch made no direct reference to Mr. Enan's age.

With respect to his circumstantial case of age discrimination, the basic three-part analysis of McDonnell Douglas v. Green, 411 U.S. 792 (1973) is applicable. Under that test, the plaintiff makes a prima facie case by showing that 1) he was within the protected age group, 2) he was performing his job at a level that met his employer's legitimate expectations, 3) he was discharged, and 4) his employer attempted to replace him. Radabaugh, 997 F.2d at 449. The record in this case reflects that defendant resigned

from his position on November 8, 1994. In order to make a prima facia case, Mr. Enan would then have to show he was constructively discharged.

> Constructive discharge occurs when an employer 'deliberately renders the employee's working conditions intolerable and thus forces the employee to quit [her] job.' The employee must show that a reasonable person in her situation would find the working conditions intolerable. In other words, 'intolerability of working conditions is judged by an objective standard, not the [employee's] subjective feelings.' Further, the employer must have intended to force the employee to quit. Constructive discharge plaintiffs may prove intent 'by showing their resignation was a reasonably foreseeable consequence of their employers' discriminatory actions.'

Gartman v. Gencorp. Inc., Nos. 96-3248EA, 96-3466EA, 1997 WL 3944749, at *2 (8th Cir. Jul. 16, 1997) (citations omitted). However, Mr. Enan did not advance the argument that he was constructively discharged and the district court found no evidence to support such a claim. Mr. Enan did not offer any evidence that his working conditions were so intolerable that he felt forced to resign. Furthermore, he did not show that his resignation was related in any way to any alleged age discrimination. At best, Mr. Enan argued that he resigned because his job duties were materially diminished. We agree with the district court that Mr. Enan failed to present any evidence to support a claim of constructive discharge.

The district court's grant of summary judgment on the age discrimination claim is AFFIRMED. The district court's grant of summary judgment on the breach of contract claim for failure to pay severance compensation is REVERSED AND REMANDED for trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT