Lorin B. ELLISON, Plaintiff,

v.

PREMIER SALONS INTERNATIONAL, INC., et al., Defendants.

No. 3–95–899.

United States District Court,
D. Minnesota,
Third Division.

Oct. 17, 1997.

James H. Kaster and Stephen Chippendale, Minneapolis, MN, for Plaintiff.

Linda L. Holstein and Karen E. Reilly, Minneapolis, MN, for Defendants.

MEMORANDUM OPINION AND ORDER

DAVIS, District Judge.

This matter is before the Court upon the motion of Defendant for summary judgment.

In 1993, Plaintiff was an independent financial consultant for Capello Capital Group (CCG). In the summer of 1993, Plaintiff was introduced to Brian Luborsky, the principal owner of Magicuts, Inc., when Luborsky approached CCG for assistance in expanding the number of Magicuts salons. Plaintiff, as a financial consultant with CCG, assisted Magicuts in the purchase of another company, MEI Diversified, Inc., (MEI), which was in Chapter 11 bankruptcy. After MEI was purchased, the organization of the new company changed. The salons were operated under the names Magicuts, Inc., Premier Salons International, Inc. (Premier Salons) and Premier Salons Canada, Inc. Premier Salons is headquartered in Edina, Minnesota. Magicuts and Premier Salons Canada, Inc. are headquartered in Markham, Ontario. Premier Salons is primarily owned by Brian Luborsky, the President and CEO, and Chris Cawson through their holding companies Premier Salons Holdings, Inc. and Gemm Holdings, Inc.

In January 1994, Plaintiff was interviewed and hired for the position of Premier Salon's chief financial officer. He was 62 years old at the time. Plaintiff's base salary was $110,000, plus benefits. Plaintiff began working for Premier Salons in April 1994. As part of his duties, Plaintiff was to assist in an initial public offering (IPO) of the stock of the companies owned by Mr. Luborsky and Mr. Cawson on the Toronto stock market, the proceeds of which would be used to finance the purchase of MEI. The IPO, for reasons unrelated to this case, did not go through.

On May 26, 1995, Mr. Luborsky notified Plaintiff that he would be terminated. Defendants assert that they became unsure of Plaintiff's ability to carry out the best interests of the company. In late May and early June, Plaintiff met with Robert Sanders of Premier Salon's Human Resources Department to discuss a proposed separation agreement. On June 1, 1995, Sanders provided Plaintiff a memo outlining tentative separation terms. After reviewing the memo, Plaintiff asserts he informed Sanders of changes he would like to make or add to the settlement. On June 20, 1995, Sanders provided Plaintiff a document entitled "Separation Agreement and Release of Claims"

("Agreement") which incorporated some of Plaintiff's suggestions. Sanders had signed the Agreement on June 19, 1995 and had it notarized. The Agreement had a total value of approximately $91,000, and included provisions for a retroactive raise, severance, consultant fees and bonuses. Because the Agreement also included a release of claims, it provided that Plaintiff would have 21 days to consider the Agreement.

On June 22, 1995, Sanders met with Plaintiff to discuss the Agreement. There are factual disputes as to what happened at this meeting. Plaintiff alleges he merely suggested further changes, and that the suggestions were not deal breakers. Sanders stated that Plaintiff demanded that his proposed changes be made, otherwise they had no agreement and that Plaintiff threatened to sue. On July 6, 1995, Sanders states that he phoned Plaintiff and informed him the Agreement was revoked because Premier Salons had learned that Plaintiff had made defamatory statements about Premier Salons or Luborsky. Sanders asserts that he informed Plaintiff that a new, less valuable, agreement would be sent him. Plaintiff denies being told the Agreement was revoked. Prior to receiving the new agreement, Plaintiff signed the original Agreement, and sent it to Premier. Defendants did not perform any obligations under the Agreement, and Plaintiff brought this action alleging breach of contract and age discrimination.

Previously, Plaintiff moved this Court for partial summary judgment in his favor on the breach of contract claim. Plaintiff argued the Agreement was irrevocable for 21 days, pursuant to the Older Workers Benefit Protection Act (OWBPA) 29 U.S.C. § 626(f)(1), and that Defendants should be forced to comply with the Agreement. Defendants argued that the Agreement was not irrevocable pursuant to OWBPA because the 21 day review requirement is to ensure that a person knowingly and voluntarily waived his/her rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621–634 ("ADEA"). Defendants argued that the OWBPA does not, however, prevent an employer from revoking an offer before the 21 days are up. The motion for partial sum-

mary judgment was denied due to genuine issues of material fact.

Defendants now move the Court for summary judgment in its favor on Plaintiff's claim of age discrimination under the ADEA and on the contract claim.

### 1. Contract claim

■ Defendants argue that summary judgment must be granted in its favor on the breach of contract claim because the Agreement was rejected by Plaintiff and revoked by Defendants prior to the date Plaintiff executed and returned the Agreement to Defendants' offices. As discussed above, this Court has previously ruled a genuine issue of material fact precludes summary judgment on the breach of contract claim. Although the parties have completed discovery since the prior ruling, the Court cannot discern the existence of additional facts that would change its prior ruling. The record contains genuine issues of material fact as to whether the Agreement was rejected by Plaintiff, as it is Plaintiff's position that the changes he suggested to Sanders at the meeting on June 22, 1995 were merely that "suggestions" and that Plaintiff did not condition his acceptance upon those changes being incorporated. "[I]t is equally well settled that requested or suggested modifications of the offer will not preclude the formation of a contract where it clearly appears that the offer is positively accepted, regardless of whether the requests are granted." *Podany v. Erickson,* 235 Minn. 36, 49 N.W.2d 193, 194 (1951). At this time, there are genuine issues of material fact as to whether Plaintiff rejected the Agreement.

The Court also finds that genuine issues of material fact exist on the issue of whether the Agreement was revoked prior to the acceptance by Plaintiff. Sanders asserts he informed Plaintiff on July 6, 1995 that the Agreement was revoked. Plaintiff denies being informed the Agreement was revoked at the time he eventually executed and returned the Agreement to Premier Salons.

■ Finally, Plaintiff asserts that irregardless of whether Defendants revoked the Agreement, the OWBPA provides that the Agreement was irrevocable. This argument is based on the fact that under OWBPA, an employee is given 21 days to review a waiver of his or her rights under the ADEA. 29 U.S.C. § 626(f)(1)(F)(i). It is Plaintiff's position that this provision creates an irrevocable power of acceptance. The Court disagrees.

There is nothing in the OWBPA that provides the 21 day review period constitutes an irrevocable power of acceptance. Nor does the legislative history support Plaintiff's position. The Court agrees with the position asserted by Defendants that the 21 review period is relevant only to the issue of whether an employee's waiver of his or her rights under the ADEA was knowing and voluntary. Accordingly, the Court finds OWBPA does not provide for an irrevocable power of acceptance.

### 2. ADEA claim

The ADEA makes it unlawful for an employer to discharge, or otherwise discriminate against an individual with regard to compensation and other terms and conditions of employment on the basis of age. 29 U.S.C. § 623(a)(1). Persons forty years of age or older are protected by the ADEA. 29 U.S.C. § 631. There are two methods by which a plaintiff may prove intentional discrimination on the basis of age. *Rothmeier v. Investment Advisers, Inc.,* 85 F.3d 1328, 1331 (8th Cir.1991). Direct evidence of employment discrimination based on age is, of course, one way a plaintiff can meet his burden of proof. *Id.* The allocation of the burden of proof depends on whether a case is characterized as a "pretext" case or as a "mixed-motive" case. *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 448 (8th Cir. 1993). In a pretext case, the Court must apply the burden shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the employer need only articulate a legitimate, nondiscriminatory reason for its employment. The plaintiff retains the ultimate burden of proving the employer's proffered reason is pretextual, and that plaintiff was indeed discriminated against. *Radabaugh,* 997 F.2d at 448.

In a mixed-motives case, however, the plaintiff has the initial burden of proving an illegitimate factor was a motivating factor in an employment decision which was adverse to plaintiff. *Id.* If the plaintiff meets his or her initial showing, the burden shifts to the employer to prove the same employment decision would have been made even if the illegitimate factor was not considered. *Id.* The Eighth Circuit has determined that a plaintiff is entitled to his or her claim under the mixed-motive analysis if plaintiff produces

> evidence of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude ... sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision.

*Id.*, at 449.

■ Plaintiff asserts the following comments made by Mr. Luborsky, who is the undisputed decision maker as to Plaintiff's termination, support his ADEA claim and create genuine issues of material fact rendering summary judgment inappropriate.

1. Repeated comments by Mr. Luborsky regarding Plaintiff's age throughout his employment, such as the e-mail sent by Mr. Luborsky which stated "Its just so great to see someone of your age accomplish something like this!!!! You and George Burns are an inspiration to the elderly EVERYWHERE!!!"

2. A comment made by Mr. Luborsky during the termination meeting that Plaintiff was terminated because Plaintiff's age meant he would not be around for a long time.

3. A statement to Plaintiff's wife shortly after Plaintiff's termination by Mr. Luborsky to the effect that he never intended for Plaintiff to serve as the CFO for more than two or three years.

The first category of comments listed above do not reflect a discriminatory attitude. Plaintiff has not put forth any evidence to indicate that Mr. Luborsky exhibited discriminatory animus toward Plaintiff because of his age. The comments made during his employment were admittedly in fun, and none were derogatory. Plaintiff Dep. at 110.

With regard to the comment made by Mr. Luborsky during the termination meeting, and to Plaintiff's wife, the Court finds such comments do not establish a discriminatory attitude given the circumstances of Plaintiff's relationship with Mr. Luborsky and Premier. Plaintiff admitted at his deposition, and the same was memorialized in the notes he took after the termination meeting, that Mr. Luborsky told him he was being replaced because they had different philosophies. Plaintiff Dep. Ex No. 8. Plaintiff admitted that he and Mr. Luborsky had philosophical differences. Plaintiff Dep. at 262. Furthermore, the record reflects that Plaintiff, not Mr. Luborsky, first put his age at issue in an attempt to obtain greater compensation. As early as August 1994, Plaintiff was requesting a higher salary. Plaintiff believed, and continually communicated to Mr. Luborsky, that he was not being compensated at a rate equal to other executives at his level. Plaintiff Dep. Exs., 5, 11 and 12. At a meeting in February 1995, Plaintiff told Mr. Luborsky he was getting up in years, that he had limited earning power, and that he would consider taking outside consulting jobs in order to earn more money. Plaintiff Dep. at 122. Defendants assert that they could not afford to pay Plaintiff more money because the Premier Salons was suffering financially, another fact Plaintiff does not dispute. Plaintiff Dep. at 81, Plaintiff Dep. Ex. 8, p. 5 ("Co in critical financial position LBE departure will cause real problem w/ First Bank"). The notes taken by Plaintiff after the termination meeting also reflect that Mr. Luborsky told Plaintiff he thought Plaintiff would leave Premier Salons because of Plaintiff's comments during a meeting February 1995. *Id.*, at 120.

Under these circumstances, the Court cannot find that the comments made by Mr. Luborsky, that he did not think Plaintiff would be around for a long time, establishes or supports an inference of discriminatory animus towards Plaintiff's age. Rather, the comment suggests that Mr. Luborsky believed that Plaintiff would leave because he was not being paid enough money—an infer-

ence that is supported by Plaintiff's own deposition testimony, memoranda and notes.

Accordingly, Plaintiff has not met the initial burden required in mixed-motive cases, as he has failed to prove an illegitimate factor was a motivating factor in the decision to terminate Plaintiff.

■ Plaintiff's claim of age discrimination under the ADEA does not survive summary judgment under the *McDonnell Douglas* test. Assuming, without deciding, that Plaintiff established a prima facie case, Defendants have asserted a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff. Defendants assert that Plaintiff was terminated from his job because of perceived deficiencies in his ability to provide the CEO and others with timely and accurate financial information, failure to reduce the size of his department and because of differences with Mr. Luborsky regarding the appropriate way to present financial information regarding the company to potential investors. Furthermore, as discussed above, Plaintiff continually sought raises in his compensation and intimated that he would get other consulting jobs in order to make more money, at a time when Premier Salons was weak financially.

To establish that Defendants' proffered reasons for his termination are pretext, Plaintiff must show that such reasons were false, and that discrimination was the real reason. *Rothmeier*, 85 F.3d at 1334. Plaintiff argues that Defendants' asserted reason for his termination, that Plaintiff had perceived deficiencies in his duties as CFO, are a pretext for discrimination because the record establishes that he performed very well in his job, as illustrated by the fact that he obtained the financing needed by Premier Salons from First Bank. Plaintiff also asserts the comments referenced above also support his claim of pretext, as do the circumstances of his hiring.

The Court finds that Plaintiff has failed to put forth sufficient evidence which establishes a genuine issue of material fact as to pretext. As discussed above, the comments made by Mr. Luborsky and others do not support an inference of discriminatory animus. Furthermore, Plaintiff admitted that he and Mr. Luborsky had philosophical differences. Plaintiff Dep. at 262. Nor does Plaintiff dispute the fact that he received a memo from Mr. Luborsky dated March 19, 1995 criticizing a business plan prepared by Plaintiff. He also acknowledges that Mr. Luborsky was displeased with financial figures prepared for Magicuts by his department. Plaintiff Dep. at 255. Because Plaintiff cannot show that the proffered reasons by Defendants were false, the fact that he was also praised at times for his performance does not establish pretext.

The Court also finds that the circumstances of Plaintiff's hiring go against a finding of pretext in this case. Plaintiff was 62 years old when he was hired and 63 when fired. As noted in *Rothmeier*, such facts run counter to any reasonable inference of discriminated based on age. *Id.*, at 1337. This is true in this case given the lack of other evidence supporting his claim.

Based on the above, Defendants are entitled to summary judgment on Plaintiff's ADEA claim.

3. Proper Defendants

As the only claim remaining in this case is the contract claim, and as the parties to the Agreement were only Plaintiff and Premier Salons, Defendants Premier Salons Canada, Inc., Premier Salons International, Ltd., Magicuts, Inc., GEMM Holdings, Inc., and Premier Salons Holdings, Inc. are hereby dismissed.

IT IS HEREBY ORDERED that Defendants' motion for summary judgment is granted in part and denied in part as follows:

1. Defendants' motion for summary judgment on the breach of contract claim, Count Two is DENIED;

2. Defendants' motion for summary judgment on the ADEA claim, Count One is GRANTED.

3. All claims asserted against Premier Salons Canada, Inc., Premier Salons International, Ltd., Magicuts, Inc., GEMM Holdings, Inc., and Premier

Salons Holdings, Inc. are DISMISSED WITH PREJUDICE.