# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 98-1384

_____

| | | |
|---|---|---|
| Lorin B. Ellison, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Premier Salons International, Inc., a | * | Appeal from the United States |
| Delaware Corporation | * | District Court for the |
| | * | District of Minnesota. |
| Appellees. | * | |
| ---------------------- | * | |
| American Association of Retired | * | |
| Persons, | * | |
| | * | |
| | * | |
| Amicus on Behalf of Appellant. | * | |

_____

Submitted: November 18, 1998
Filed: January 6, 1999

_____

Before BOWMAN, Chief Judge, LOKEN, Circuit Judge, and SIPPEL,[1] District Judge.

_____

BOWMAN, Chief Judge.

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri, sitting by designation.

Lorin Ellison appeals the judgment of the District Court[2] in Ellison's action for breach of contract. The issue presented is whether the twenty-one-day review period provided by the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f) (1994), for waivers of claims under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634 (1994), establishes an irrevocable power of acceptance for twenty-one days. The District Court held that it does not. We affirm.

## I.

The facts of the case are thoroughly presented in the opinion of the District Court, so we recite only those facts relevant to this appeal. See Ellison v. Premier Salons Int'l, Inc., 981 F. Supp. 1219, 1220 (D. Minn. 1997). Ellison was hired by Premier Salons International, Inc. as its chief financial officer in January 1994 when he was 62 years old. On May 26, 1995, Ellison was notified that his employment would be terminated. Premier's Vice President of Human Relations, Robert Sanders, began working with Ellison to draw up a severance package. Sanders gave Ellison a memo outlining tentative separation terms on June 1, 1995, and thereafter Ellison suggested certain changes. On June 20, 1995, Sanders provided Ellison a document entitled "Separation Agreement and Release of Claims," which Sanders had signed and had notarized the previous day. The Agreement stated that in exchange for various payments, Ellison would release all claims against Premier including claims under the ADEA.

When Ellison and Sanders met to discuss the Agreement on June 22, 1995, Ellison gave Sanders a copy of the Agreement on which he had made numerous handwritten changes. Ellison asserts that these changes merely were suggestions. Sanders, to the contrary, states that Ellison demanded the handwritten changes be made

_____

[2]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

or there would be no agreement. Sanders states that on July 6, 1995, he telephoned Ellison to inform him that the offered Agreement was revoked because Premier had learned that Ellison had made defamatory statements about the company or its president. Sanders asserts that during this telephone call he informed Ellison that a new, less valuable agreement would be sent to him. Ellison denies being told the offered Agreement was revoked. Prior to receiving the new agreement, Ellison signed the original Agreement and returned it to Premier.

Ellison sued Premier for age discrimination under the ADEA and for breach of contract based on Premier's alleged failure to honor the Agreement. The District Court granted summary judgment to Premier on the age discrimination claim. As to the breach of contract claim, the District Court rejected Ellison's argument that the OWBPA creates an irrevocable power of acceptance for twenty-one days, but it denied summary judgment to Premier because there were disputes of material fact regarding the alleged rejection and revocation of the offered Agreement. See Ellison, 981 F. Supp. at 1221. A jury heard the breach of contract claim and found Ellison had rejected the offered Agreement. Ellison subsequently moved for judgment as a matter of law (the District Court treated the motion as one for reconsideration) based on the alleged irrevocable power of acceptance created by the OWBPA or for a new trial, and the District Court denied both motions. Ellison appeals the judgment entered for Premier on the breach of contract claim. He does not appeal the grant of summary judgment for Premier on the ADEA claim.

## II.

We review the District Court's interpretation of the OWBPA de novo. See United States v. Williams, 136 F.3d 547, 550 (8th Cir. 1998). The OWBPA provides that an individual may not waive any right or claim under the ADEA unless the waiver is knowing and voluntary, and it defines the minimum requirements for determining what is a knowing and voluntary waiver. See 29 U.S.C. § 626(f)(1):

Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum--

(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual . . . ;

(B) the waiver specifically refers to rights or claims arising under [the ADEA];

(C) the individual does not waive rights or claims that may arise after the date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F)(i) the individual is given a period of at least 21 days within which to consider the agreement; . . .

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired . . . .

Ellison argues that the OWBPA provides an irrevocable power of acceptance for twenty-one days and, therefore, that offers governed by the OWBPA, unlike offers governed by common law contract principles, cannot be rejected or revoked during the twenty-one-day period.[3] He contends that the Agreement should be enforced because he accepted Premier's offer before the twenty-one days expired. Premier asserts that the offer was revocable because the twenty-one-day requirement is relevant only to the

---

[3]Under common law contract principles, the offeror, by extending an offer, creates a power of acceptance in the offeree that continues until terminated through acceptance by the offeree, rejection by the offeree (either expressly or by making a counteroffer), or revocation by the offeror. See generally Farnsworth on Contracts, §§ 3:16-3:20 (2d ed. 1998).

issue of whether the employee's waiver of rights under the ADEA was knowing and voluntary.

Ellison's argument presents a question of first impression. In interpreting a statute, we begin with the language of the statute. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) (internal quotation and citations omitted). The language at issue provides that a waiver may not be considered knowing and voluntary unless, among other things, "the individual is given a period of at least 21 days within which to consider the agreement." 29 U.S.C. § 626(f)(1)(F)(i) (1994). This language does not state that the employer's offer is irrevocable for twenty-one days, or that the offer creates a twenty-one-day option contract, or even that the offer must be held open for twenty-one days. The language does not forbid such offers from being rejected or revoked for twenty-one days, nor does it state that common law contract principles are preempted. Contrary to Ellison's contention, the language of the OWBPA does not create an irrevocable power of acceptance. The OWBPA simply provides that the employee be given twenty-one days within which to consider an offered agreement if the waiver of potential ADEA claims is to be considered knowing and voluntary, and thus valid.

To support his assertion that the OWBPA creates an irrevocable power of acceptance, Ellison argues that if the employer can revoke an offered agreement then an employee could not certify that he or she was permitted twenty-one days to consider the agreement until after the twenty-one-day period had passed. Ellison also argues that if such offers are revocable, then an employee will not know how long the offer will remain open and may feel pressured to accept early for fear the employer will revoke the offer before the twenty-one days expire. We reject these arguments and other similar arguments that Ellison makes. First, the structure of the OWBPA mandates certain actions by the employer, such as giving twenty-one days for

consideration of an offer, but places no requirements on the employee. Second, the language of the statute does not require employees to wait the full twenty-one days before accepting or rejecting the offer; it is sufficient if they were not forced to accept prior to the end of the twenty-one-day period. See, e.g., Anderson v. Lifeco Servs. Corp., 881 F. Supp. 1500, 1504 (D. Colo. 1995); Moss v. Bank IV, No. 93-1396, 1995 WL 708686, at *3 (D. Kan. Nov. 3, 1995); 29 C.F.R. § 1625.22(e)(6) (1998). The statute similarly does not forbid an employer from revoking an offer before the twenty-one days expire. If Ellison's assertion were correct, an employer could not revoke an offered separation agreement even if the day after the offer was made the employee sold the employer's trade secrets to the company's biggest competitor, or the employee decided to shoot the company's president, or, as here, the employee made defamatory statements about the company or its president. The statute does not state that employees must be given the opportunity to waive their ADEA rights and it does not require employers to offer separation agreements. The language of the OWBPA simply seeks to ensure that, if the employee does waive his or her ADEA rights, the waiver is knowing and voluntary. If the offer is revoked prior to its acceptance, then the employee has not waived any rights under the ADEA and the OWBPA is not violated.

Finding no Congressional intent to preempt the principles of rejection and revocation within the statute's language, we turn to Ellison's argument that the Supreme Court held the OWBPA preempted all common law contract principles by stating, "The OWBPA sets up its own regime for assessing the effect of ADEA waivers, separate and apart from contract law." Oubre v. Entergy Operations, Inc., 118 S. Ct. 838, 841 (1998). Ellison places too much emphasis on the last phrase and reads it out of context. Only the assessment of the effect of ADEA waivers is separate and apart from contract law. Rejection or revocation, by definition, must occur prior to acceptance of the proposed waiver agreement and thus prior to any actual waiver of ADEA claims. Because the OWBPA is concerned only with the validity of agreed upon waiver agreements, it does not preempt contract formation principles such as rejection and revocation.

In Oubre, the Supreme Court held that an employee cannot ratify a waiver that does not comply with the OWBPA. See Oubre, 118 S. Ct. at 842. It so held based on a clear statutory command that a waiver cannot effectively release ADEA claims unless it satisfies the OWBPA's requirements. As the Court stated, "The OWBPA implements Congress' policy via a strict, unqualified statutory stricture on waivers, and we are bound to take Congress at its word." Id. at 841. Because the release did not comply with the OWBPA, the release could not bar Oubre's ADEA suit and the employer could not excuse its failure to comply by invoking the employee's failure to tender back the consideration paid in exchange for the waiver. In Oubre, the Court addressed only whether a waiver, once agreed upon by both parties, is effective to bar claims under the ADEA when the waiver does not comply with the OWBPA. The Court did not discuss contract formation issues such as rejection and revocation, and it never stated that all common law contract principles were preempted by the OWBPA.

The facts of Oubre stand in stark contrast to the present case. Ellison admits that the separation agreement he was offered complied with the OWBPA's requirements. See Appellant's Br. at 7. Moreover, there has been no waiver of Ellison's rights under the ADEA. In fact, Ellison has litigated his ADEA claim (and lost). If this Court were to enforce the offered agreement, then Ellison would effectively have gotten two bites at the apple, because he would have litigated his ADEA claim and he would receive the severance package that was offered in exchange for the waiver of that ADEA claim.

As a final argument, Ellison broadly asserts that application of rejection and revocation would be inequitable and contrary to the protective nature of the OWBPA and the policy of encouraging settlement. See Appellant's Br. at 16. But as we already have explained, the OWBPA protects employees from unknowingly or involuntarily releasing their potential ADEA claims. The OWBPA neither encourages nor discourages settlements and it does not entitle employees to the best possible separation agreement in exchange for the waiver of their ADEA rights. The OWBPA does not require an employer to make a settlement offer. If the employer does not offer a

settlement, or if the employee rejects or the employer revokes an offered agreement prior to its acceptance, then the OWBPA is not violated, because the employee has not waived any claims under the ADEA. It is not for the courts to amend the OWBPA to include requirements that Congress has not placed in the statute.

## III.

Because Ellison has not waived his rights under the ADEA, and in fact has litigated his ADEA claim, he has not been denied the benefit of the OWBPA. We agree with the District Court that the OWBPA does not create an irrevocable twenty-one-day power of acceptance for offered separation agreements that include waivers of ADEA claims. The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.