NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0264n.06

Nos. 21-3226/3237

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MONICA JACKSON, | ) | **FILED**<br>Jul 05, 2022<br>DEBORAH S. HUNT, Clerk |
| Plaintiff - Intervening Appellee (21-3226),<br>Plaintiff - Appellee (21-3237), | )<br>)<br>)<br>) | |
| ROBERT ALAN STEINBERG; TERRENCE L.<br>GOODMAN, | )<br>)<br>) | ON APPEAL FROM THE<br>UNITED STATES DISTRICT<br>COURT FOR THE<br>SOUTHERN DISTRICT OF<br>OHIO |
| Interested Parties - Appellants (21-3226), | )<br>) | |
| v. | )<br>) | |
| GENERAL ELECTRIC CO., | )<br>)<br>) | OPINION |
| Defendant - Appellant (21-3237). | )<br>)<br>) | |
| | ) | |

Before: BOGGS, COLE, and GRIFFIN, Circuit Judges.

BOGGS, Circuit Judge. At the end of an eight-hour mediation to resolve her employment-discrimination claims, Monica Jackson stated that she accepted a settlement agreement with her employer, General Electric ("GE"). Yet, when GE later presented her with a written version of the settlement agreement to sign, she refused to do so. The district court denied GE's resulting motion to enforce the settlement, reasoning that a provision in the settlement agreement giving Jackson twenty-one days to "consider" her decision to accept created an option contract, and that she declined to exercise the option. We affirm the district court's refusal to enforce the settlement, although on different grounds.

**I**

Monica Jackson was employed as the "Senior HR Manager-Diversity" at GE Aviation, a GE business unit headquartered in Ohio. She sued GE in 2019, claiming that it unlawfully discriminated against her because of her race, in violation of 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and Ohio contract law. On January 23, 2020, Jackson and her then-attorneys, Robert Steinberg and Terrence Goodman, participated in an eight-hour-long mediation with GE and its counsel, supervised by Magistrate Judge Stephanie Bowman.

At the end of the conference, the parties indicated that they had reached an agreement, and Magistrate Judge Bowman held an on-the-record proceeding to confirm the agreement and state its terms. She began by explaining the basic contours of the agreement, most of which remain under seal and are unrelated to the issues in this case. Magistrate Judge Bowman then stated that "a draft settlement agreement was prepared by [GE's counsel] and circulated to plaintiff's counsel. That agreement will be the basis, you know, moving forward for the agreement, with a couple minor modifications and additions." After identifying those "modifications," she then asked both Jackson and GE's representative if they agreed "to the terms as I have set forth on the record today," and both answered in the affirmative. Magistrate Judge Bowman then indicated on the docket that the matter had been resolved. Four days later, the district court dismissed the matter with prejudice but retained jurisdiction over enforcement of the settlement and permitted either party to reopen the case within forty-five days for good cause.

The draft settlement agreement (which the district court termed the "Template Agreement") reflected the parties' oral agreement and included additional terms. Counsel for GE provided a version of the Template Agreement to Jackson at the mediation, then, on January 28, 2020, emailed Jackson's attorneys an initial revised draft reflecting some of the agreed-upon

modifications. The parties exchanged comments on the proposed agreement over the next month. The forty-five days expired without either party seeking to reopen the case.

The provision at issue in this case contains language indicating that Jackson would receive up to twenty-one days to review the agreement. There is some dispute between the parties as to the precise language used in the agreement, however. According to Jackson and the district court, the Template Agreement stated: "Employee acknowledges and agrees . . . that the Company has given her at least twenty-one (21) days to consider her decision to enter into this Agreement; and . . . that she has the right to revoke this Agreement at any time within seven (7) days after she signs it." *See Jackson v. Gen. Elec. Aviation*, 518 F. Supp. 3d 1104, 1108 (S.D. Ohio 2021). That language corresponds to Paragraph 4(e) of the only version of the Template Agreement in the record before this court, which is a revised version circulated on February 13. *See ibid.* Appellants suggest an alternative wording: "Employee has twenty one (21) days to consider the Agreement and her waiver of rights under the Age Discrimination in Employment Act, as amended." But that language does not appear in a version of the Template Agreement in the record before us.[1] Regardless, the parties' dispute over the exact language does not affect our analysis, as we explain below.

As negotiations continued through the end of January and into February, Jackson did not sign the revised, written agreement. Nor did she sign when the negotiations between counsel ended in mid-February. In April 2020, Steinberg and Goodman indicated to the district court that Jackson was unwilling to execute the agreement and that they might have developed a conflict of interest with her. *See id.* at 1109. The court held a telephonic hearing, and Jackson (now represented by new counsel) argued that the parties had not reached a binding agreement, asserting that they did

---

[1] In their briefing and at oral argument, Appellants point to a page in the record from the transcript of the hearing on the motion to enforce. This page indicates that a Template Agreement exists but does not reproduce the language in that document.

not have a meeting of the minds concerning whether GE included her 2019 bonus in the settlement payment or instead owed her that amount independent of the settlement. *Id.* at 1109–10. GE moved to enforce the settlement.

The district court held an evidentiary hearing on the motion to enforce on October 29, 2020. Jackson, Magistrate Judge Bowman, counsel for GE, and Steinberg testified, and all witnesses except Jackson testified that the settlement payment was understood to be "inclusive of all amounts that GE would pay Jackson." *Id.* at 1110. The parties then submitted post-hearing briefs addressing whether Jackson was entitled to a twenty-one-day review period and seven-day revocation period, and if so, whether she had already received the benefit of those terms. *See ibid.*

The district court then denied GE's motion. *Id.* at 1117. It first found that the parties had reached a binding agreement at the settlement conference, and that the agreement provided that GE's payment to Jackson was inclusive of her 2019 bonus. *Id.* at 1111–12. However, the district court further determined that the parties' agreement included a twenty-one-day period for Jackson to review the Template Agreement, which amounted to an option contract. *Id.* at 1112. Because she did not exercise her option to accept the Template Agreement, the court reasoned, she did not breach the agreement, and so it could not be enforced against her. *See ibid.* The court also noted that the matter remained dismissed with prejudice.[2] *Id.* at 1117. GE, Steinberg, and Goodman appealed.

---

[2] Jackson filed a motion to set aside the judgment of dismissal pursuant to Federal Rule of Civil Procedure 60(b), and the district court has deferred decision until this appeal is resolved.

**II**

**A**

We have jurisdiction pursuant to 28 U.S.C. § 1291. The district court had jurisdiction over Jackson's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and it exercised supplemental jurisdiction over her related state claims pursuant to 28 U.S.C. § 1367. A court may also "dismiss pending claims while retaining jurisdiction over the future enforcement of a settlement agreement," as the district court did here. *See RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 641 (6th Cir. 2001). The court also permitted Steinberg and Goodman to participate in the enforcement proceedings in order to recover on their attorney's lien on the settlement payment. *See Exact Software N. Am., Inc. v. DeMoisey*, 718 F.3d 535, 544–45 (6th Cir. 2013); *Kalyawongsa v. Moffett*, 105 F.3d 283, 287–88 (6th Cir. 1997).[3]

We review a district court's factual finding that the parties agreed to the terms of a settlement agreement for clear error, and we review its decision on the motion to enforce based on that factual finding for abuse of discretion. *See Therma-Scan, Inc, v. Thermoscan, Inc.*, 217 F.3d 414, 419 (6th Cir. 2000). We review the court's interpretation of a contract, such as a settlement agreement, de novo. *See Golden v. Kelsey-Hayes Co.*, 73 F.3d 648, 653 (6th Cir. 1996).

---

[3] Steinberg and Goodman argue their attorney's lien on the settlement payment permits them to pursue an appeal, and that they have consulted with ethics experts from both local and state bar associations before doing so. A district court generally has the authority to resolve fee disputes between a party and its attorneys, whether as an exercise of supplemental jurisdiction, *see Kalyawongsa*, 105 F.3d at 287–88, or as part of its "traditional authority over the parties and lawyers before it," *Exact Software N. Am., Inc.*, 718 F.3d at 544. However, we note that Steinberg and Goodman do more in this case than simply advocate for fees owed to them; rather, they argue the merits of the settlement agreement's enforceability alongside their erstwhile adversary, GE. We express no opinion on whether the district court properly permitted the attorneys' participation in this matter, however, because their arguments overlap with those of GE, and so the outcome of this appeal remains the same regardless of whether their participation was proper.

**B**

Jackson contends that, because there was no "meeting of the minds" on all essential terms, the district court erred in concluding that the settlement agreement was enforceable. But the district court determined, after holding a hearing, that Jackson's oral assent during the mediation constituted acceptance of the essential terms of the agreement, and that those terms were reasonably certain. *See Jackson*, 518 F. Supp. 3d at 1111–12. We conclude that the court acted well within its discretion in using this procedure, and its finding of an agreement was not clearly erroneous. *See Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *Rulli v. Fan Co.*, 683 N.E.2d 337, 339 (Ohio 1997) (explaining that courts should hold an evidentiary hearing when parties dispute a settlement agreement).

"It is well established that courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Scheuner Corp.*, 841 F.2d at 154. The parties agree that Ohio law governs the enforceability of the settlement agreement in this case. *See Bamerilease Cap. Corp. v. Nearburg*, 958 F.2d 150, 154 (6th Cir. 1992). Under Ohio law, "[a] meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract," *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002), and those terms must be "reasonably certain and clear," *Rulli*, 683 N.E.2d at 339. A settlement agreement may be enforceable even when not in writing. *See RE/MAX Int'l*, 271 F.3d at 646; *Kostelnik*, 770 N.E.2d at 61–62; *Spercel v. Sterling Indus., Inc.*, 285 N.E.2d 324, 326 (Ohio 1972). And a court's determination on whether an agreement was reached is a question of fact. *See Oglebay Norton Co. v. Armco, Inc.*, 556 N.E.2d 515, 519 (Ohio 1990).

The transcript of the proceedings before Magistrate Judge Bowman demonstrates that the parties reached an agreement. At the close of the mediation, Magistrate Judge Bowman specified

that the Template Agreement "will be the basis . . . moving forward for the agreement, with a couple minor modifications and additions." She then identified the modifications to which the parties had agreed and asked both Jackson and GE's representative whether they "agree[d] to the terms as I have set forth on the record today[.]" Both did so. These "objective acts of the parties" indicated that they reached a meeting of the minds during the mediation, even though several terms remained to be finalized. *RE/MAX Int'l*, 271 F.3d at 646.

Jackson maintains that she always understood that GE's settlement payment was separate from the amount owed to her as a bonus for 2019, and that "there were still material terms of the settlement agreement that had not been finalized." However, notwithstanding her "unexpressed intent" about the agreement she was accepting, her "expression[ ] of assent [is] generally sufficient to show a meeting of the minds." *Nilavar v. Osborn*, 711 N.E.2d 726, 733 (Ohio Ct. App. 1998); *see also Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1195 (S.D. Ohio 2013) ("To determine whether the parties have manifested mutual assent, the law is only interested in objective manifestations of intent." (quotation marks omitted)).

The district court bolstered this strong evidence that the parties had reached an agreement by holding an evidentiary hearing. *See Rulli*, 683 N.E.2d at 339. Both Magistrate Judge Bowman and Jackson's former counsel, Steinberg, testified that the parties discussed the settlement payment as inclusive of the 2019 bonus. Jackson testified to the contrary. But "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). Therefore, the district court did not clearly err in finding that the parties reached an agreement.

**C**

In a normal motion to enforce, Jackson's assent to the settlement agreement at the mediation would be decisive. After all, upon reaching a settlement agreement, a party cannot later change its mind to avoid enforcement. *See Mack v. Polson Rubber Co.*, 470 N.E.2d 902, 904 (Ohio 1984); *Rayco Mfg., Inc. v. Murphy, Rogers, Sloss & Gambel*, 142 N.E.3d 1267, 1287 (Ohio Ct. App. 2019). But, the question is what *was* the settlement that was agreed to. The document to which Jackson agreed—the Template Agreement, with the modifications enumerated by Magistrate Judge Bowman—included a term stating that "[GE] has advised [Jackson] she can consider her decision to enter into this Agreement for up to twenty-one (21) days; and . . . that she has the right to revoke this Agreement at any time within seven (7) days after she signs it."[4] Accordingly, by assenting at the mediation, Jackson agreed to be bound by the Template Agreement, but that same agreement gave her twenty-one days after the mediation to consider whether to accept the offer of a final settlement.

There are several possible ways to characterize this situation. The district court concluded that the twenty-one-day term created an option contract, and Jackson urges us to adopt its view. *See Jackson*, 518 F. Supp. 3d at 1112. Appellants, in turn, argue that the written settlement agreement was not an option contract because it lacked separate consideration for the option. They add that even if the Template Agreement is an option contract, Jackson waived (or exercised) the option by orally accepting the settlement agreement during the mediation.

Both sides are partially correct. However, we may affirm on any grounds supported by the record on de novo review. *See Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280

---

[4] As explained above, Appellants dispute this language, but the alternate wording does not affect the substance of the provision.

F.3d 619, 629 (6th Cir. 2002). Though the Template Agreement was not an option contract, it amounted to a revocable offer that Jackson did not accept. Therefore, because the district court reached the proper outcome, we affirm its denial of the motion to enforce.

An option contract has two elements: "(1) an offer to buy, sell, or perform some act, which becomes a contract if properly accepted; and (2) the binding agreement to leave the offer open for a specified period of time." *Shrock v. Spognardi*, 46 N.E.3d 1115, 1120 (Ohio Ct. App. 2015) (citation omitted); *accord* 17 Ohio Jurisprudence 3d Contracts § 19 (2022 ed.). Without independent consideration to keep the option open, the offer remains just that—a nonbinding offer, which the offeror can revoke. *See Canter v. Garvin*, No. 14-19-30, 2021 WL 164959, at *10 (Ohio Ct. App. Jan. 19, 2021). Jackson did not give independent consideration in exchange for the twenty-one-day acceptance period, so that term did not create an option contract. *See Jackson*, 518 F. Supp. 3d at 1112. Admittedly, Jackson resigned from her employment, and that action was a bargained-for benefit that she gave to the company. But she resigned in exchange for the entire settlement agreement, not separately for an option. *See Stonecreek Props. Ltd. v. Ravenna Sav. Bank*, No. 2002-P-0129, 2004 WL 1559725, *6 (Ohio Ct. App. July 9, 2004). Thus, to the extent her actions were consideration for the entire Template Agreement, they were insufficient to result in an option contract.

Yet the district court's mistaken characterization of the agreement does not mean that the Template Agreement is enforceable. Under Ohio law, "a proposal made to be accepted within a specified time constitutes what is sometimes referred to as a continuing offer" when consideration is absent. *Plikerd v. Mongeluzzo*, 596 N.E.2d 601, 606 (Ohio Ct. App. 1992) (citation omitted). In other words, the Template Agreement specified that Jackson would receive twenty-one days to "consider her decision to enter into this Agreement," meaning that GE could *revoke* its offer of the

Template Agreement at any point within the twenty-one days, but Jackson was not required to *accept* at the end of that period. *Cf. Ritchie v. Cordray*, 461 N.E.2d 325, 327–28 (Ohio Ct. App. 1983) (noting that, even in an option contract, "[t]he main offer does not become a contract . . . unless and until its terms are accepted").

Appellants insist that the twenty-one-day review period was only included to comply with the Older Workers Benefit Protection Act, P.L. 101-433, 104 Stat. 978 (1990) (codified as relevant here at 29 U.S.C. § 626) ("OWBPA"), suggesting that the agreement's provision should be read to apply only to situations where that statute would apply. Under the OWBPA, a worker's waiver of rights under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), is not considered knowing and voluntary unless the worker receives at least twenty-one days to consider the agreement and seven days to revoke acceptance after execution. *See* § 626(f)(1)(F), (G). While compliance with the statute may have been GE's goal, the Template Agreement unambiguously states that the twenty-one-day period applies to the *entire* Template Agreement, and not merely to the waiver of ADEA claims. This meaning is apparent regardless of whether we rely on the language of the Template Agreement as depicted by the district court and Jackson ("[Jackson] *can consider her decision to enter into this Agreement* for up to twenty-one (21) days" (emphasis added)) or the language that Appellants now use ("Employee has twenty one (21) days *to consider the Agreement* and her waiver of rights under the Age Discrimination in Employment Act, as amended" (emphasis added)). Either way, the outcome remains the same: The contract gives Jackson twenty-one days to review "the Agreement" as a whole. As the language of the Template Agreement is unambiguous, this court "may not turn to evidence outside the four corners of the contract to alter its meaning." *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.*, 150 N.E.3d 28, 31 (Ohio 2019).

Appellants cite decisions indicating that a twenty-one-day review term included pursuant to the OWBPA does not create an option contract, but those authorities do not mandate enforcement in this case. For instance, Appellants rely on *Ellison v. Premier Salons International, Inc.*, 164 F.3d 1111 (8th Cir. 1999), in which the Eighth Circuit concluded that the OWBPA did not give an employee "an irrevocable power of acceptance" in contracts involving waivers of ADEA claims. *Id.* at 1112. The court explained that, although the OWBPA requires an employee to receive twenty-one days to review such a contract in order for the employee's waiver to be valid, the statute "does not forbid such offers from being rejected or revoked for twenty-one days." *Id.* at 1114. Appellants' reliance on *Ellison* is misplaced, because the Template Agreement applies by its terms to the "Agreement"—i.e., to the *entire* agreement, not just waivers of ADEA rights. And, even assuming that *Ellison* is relevant, that decision still does not aid Appellants, because it emphasized that although the OWBPA does not create an option contract, an employee remains free to decline an offer (just as the employer is free to revoke the offer). *See id.* at 1114–15. Jackson seeks to reject the Template Agreement here, so *Ellison* supports her argument.

Other out-of-circuit precedents upon which Appellants rely are also inapposite. For example, they cite *Harmon v. Wisconsin Regional Training Partnership*, 833 F. App'x 1 (7th Cir. 2020) (order), which concerned an employee who agreed to a settlement lacking a twenty-one-day review period before a magistrate judge and then refused to sign after receiving a proposed written settlement that included a review-period term, citing her right under the OWBPA to revoke acceptance within seven days. *See id.* at 2–3. The Seventh Circuit first observed that the employee had no contractual right to the review period, as she did not agree to the later, written version of the contract that included that term. *See id.* at 4. Nor did she have a right under the OWBPA to the review period because she never presented an ADEA claim and, regardless of her claim, she had

already received the statutorily mandated time periods when she orally accepted the settlement and did not revoke within seven days. *Id.* at 5. Jackson's situation is different, for she accepted the Template Agreement—including the twenty-one-day review period—at the mediation. Thus, when she orally agreed, her right to a twenty-one-day period to review the entire agreement derived from the Template Agreement itself, rather than the OWBPA. *See also Jackson*, 518 F. Supp. 3d at 1113–14 (discussing similar district-court cases).

Appellants' remaining arguments present variations on the position that, notwithstanding the Template Agreement's language, Jackson waived the review period (or exercised her option) by orally accepting the settlement agreement at the mediation or partially performing her commitments under the agreement thereafter. These arguments also fail.

Jackson did not waive the review period by orally accepting the agreement at the settlement conference. True, an oral agreement may bind the parties notwithstanding their plans to memorialize the agreement in writing. *See Remark, LLC v. Adell Broad. Corp.*, 702 F.3d 280, 283–85 (6th Cir. 2012) (discussing Restatement (Second) of Contracts § 27). But that principle is inapplicable here, because Jackson and GE orally agreed to the written Template Agreement containing the term upon which Jackson now relies. Moreover, the record contains written evidence (i.e., email chains between the parties after the mediation) and testimony (at the hearing on the enforcement motion) that Jackson did not intend to finalize the deal except by signing. *See id.* at 284. In these circumstances, where an oral agreement incorporated a written agreement that already existed at the time of acceptance, and the parties nonetheless contemplated a *later* revision to the agreement, we find little difficulty in relying upon the terms of the agreement as it existed in its unrevised state.

Two additional features of the version of the Template Agreement in the record before this court further demonstrate that Jackson did not waive the twenty-one-day review period by accepting the Template Agreement, with enumerated modifications, at the settlement conference. First, immediately following the provision granting the twenty-one-day review period, the Template Agreement states that Jackson retained "the right to revoke this Agreement at any time within seven (7) days after she signs it." It would make little sense if Jackson could end the review period by orally accepting the contract but must sign the contract to trigger the revocation period. *See Jackson*, 518 F. Supp. 3d at 1114–15. Second, the context of the settlement negotiations demonstrates that the parties had concluded their negotiations immediately before Jackson stated her acceptance on the record, so a term specifying a twenty-one-day review period "certainly suggests that the period is still to come." *Id.* at 1114.

Jackson also did not waive the review period through partial performance after the mediation. An offer invites a means of acceptance either by its language or in "any manner that is . . . reasonable under the circumstances." Restatement (Second) of Contracts § 30(2). While partial performance is a valid method of acceptance under Ohio law, *see Foor v. Columbus Real Est. Pros.com*, No. 12 CAE 08 0063, 2013 WL 3376501, at *2–3 (Ohio Ct. App. June 25, 2013), both the circumstances of the settlement negotiation and the Template Agreement's text demonstrate that here, partial performance was not an adequate means of acceptance. For example, while Jackson did perform some of the agreement's terms by resigning, she did so while her then-attorneys continued to negotiate the Template Agreement with GE and made it clear that she was not signing at that time. Moreover, the Template Agreement (again, at least in the version before the district court and this court) indicated by its terms that Jackson's signature would serve as the means of acceptance because it included provisions stating that the revocation period would run

"for seven (7) days after [Jackson] signs it"; that "[t]he day [Jackson] signs the Agreement is the 'Effective Date' of this Agreement, provided she does not revoke this Agreement"; and that any modifications "must be signed" to be effective. In these circumstances, Jackson's partial performance of the terms of the settlement—some of which were due to occur while the parties were still negotiating—did not reasonably constitute acceptance.

## III

At the mediation, Jackson accepted a written agreement—the Template Agreement, with modifications. But one of the Template Agreement's terms provided that she would have twenty-one days to consider the entire agreement, meaning that the document was, in effect, an offer. She did not accept the offer, whether by signing, orally assenting at the mediation, or partially performing the terms of the Template Agreement. Therefore, we AFFIRM the district court's denial of the motion to enforce.